IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDNA JOPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-901-GMS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM**

### I. INTRODUCTION

This action arises from the denial of Edna Jopson's ("Jopson") claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-33. Jopson filed an application for DIB in October 2001, alleging disability since April 25, 2001 because of fibromyalgia and depression. (D.I. 6 at 170-75.) After denial in 2002, (*id.* at 160-69), Jopson refiled her DIB claim in July 2004. (*Id.* at 176-78.) Jopson's DIB claim was again denied. As a result, she requested and was granted a hearing before Administrative Law Judge ("ALJ") Showalter on April 12, 2005. (*Id.* at 264.) ALJ Showalter ruled against her and her subsequent request for review was rejected by the Appeals Council in December 2005. (*Id.* at 120, 308.)

Jopson then filed an appeal in the U.S. District Court for the District of Delaware. In September 2007, the district court remanded Jopson's case to the Commissioner of the Social

---

[1] Carolyn W. Colvin became the Commissioner of the Social Security Administration ("SSA") on February 13, 2013, after briefing concluded. Although under Federal Rule of Civil Procedure 25, Carolyn W. Colvin should be substituted for Michael J. Astrue, pursuant to 42 U.S.C. § 405(g), no further proceedings are necessary to continue this action.

1

Security Administration ("Commissioner.") *Jopson v. Astrue*, 517 F. Supp. 2d 689, 699-700 (D. Del. 2007). After the remand, in August 2008, ALJ Showalter again found that Jopson was not disabled. (D.I. 6 at 47.) In September 2010, the Appeals Council denied Jopson's appeal from that decision. (*Id.* at 6–8.)

Jopson filed the instant appeal on October 21, 2010 under 42 U.S.C. § 405(g), (D.I. 11.)[2] She seeks review of the Commissioner's final decision denying her DIB claim. Presently before the court are Jopson's motion for summary judgment, (D.I. 10), and the Commissioner's cross-motion for summary judgment. (D.I. 13.) Because the court finds that ALJ Showalter's decision meets the substantial evidence test established by 42 U.S.C. § 405(g), it will grant the Commissioner's motion, deny Jopson's motion, and affirm the decision of ALJ Showalter.

## II. BACKGROUND

Jopson was born on July 26, 1953. *Jopson*, 517 F. Supp. 2d at 691. Jopson has a high school education and past work experience as a bus driver and waitress. (*Id.*) Jopson was injured in April 1996 in a bus accident. (*Id.*) This injury was later aggravated when she slipped on a hill and fell on her back. (*Id.*) Jopson has the following mental and physical impairments: fibromyalgia, depression, anxiety, and cervical and lumbar degenerative disc disease. (D.I. 6 at 30.) She was forty-seven years old at her alleged onset date of disability of April 25, 2001. (*Id.* at 234.)

### A. Evidence Presented

---

[2] This case was assigned to Judge Sleet on appeal.

To support her claim, Jopson produced medical records regarding her condition. The court will summarize these records.

Jopson has been under the care of psychiatrist Dr. Oscar Galvis since August 2000. (D.I. 6 at 468–80.) In September 2002, Jopson told Dr. Galvis that she was "a little better, I'm leveling off." (*Id.* at 473.) In February 2005, Dr. Galvis observed that Jopson was fair in her ability to deal with stress of semi-skilled and skilled work, and maintain socially appropriate behavior. (*Id.* at 579.) Dr. Galvis noted that Jopson had marked limitations as to maintaining social functioning and episodes of deterioration in work or work-like settings. (*Id.*) Dr. Galvis found that Jopson had a GAF score of 50 and anticipated that Jopson would be absent from work about three times per month. He described her ability to do work to be fair. (*Id.*)

Jopson has been under the medical care of Dr. Stephen Beneck, a physical medicine specialist, since November 2002. (*Id.* at 450–67.) In April 2005, Dr. Beneck reported that Jopson can occasionally lift five pounds of weight, and can stand a total of two hours in an eight hour day. (*Id.* at 582.) In a letter dated May 3, 2005, Dr. Beneck observed that "[Jopson] continues to have significant issues in her family." (*Id.* at 706.) Jopson had to take care of her grandchildren while her son was going through drug recovery. (*Id.*)

In February 2002, Dr. Young K. Kim performed a medical evaluation of Jopson. (*Id.* at 357.) Dr. Kim opined that there was some tenderness around her elbows, knees, and ischeal tuberosity area, but noted no joint swelling. (*Id.*) Dr. Kim also noted that Jopson was alert and her memory was intact. (*Id.*) Dr. Kim did not notice signs of muscle atrophy. (*Id.*) Jopson's gait was within normal limits. (*Id.*)

In February 2002, psychiatrist Dr. Marsha Speller, conducted a mental status examination and reported that Jopson's thought processes were intact, and there was no evidence of disorder

3

such as hallucination. (*Id.* at 372). Jopson was fully oriented to time, person, and place, and her memory was immediate. (*Id.* at 373.) Dr. Speller noted no deterioration in Jopson's personal habits but noted moderate limitations in comprehending instructions and performing work with minimal contact with others. (*Id.* at 375–76.) Dr. Speller also found moderate to moderately severe limitations in performing varied tasks. (*Id.*)

In March 2002, Dr. Janet Brandon, a state agency psychologist, reviewed the evidence and indicated that Jopson was not significantly limited in ability to understand and remember work-like procedures. (*Id.* at 393.) Dr. Brandon found that Jopson had moderately limited ability to understand and remember detailed instructions and no significant limitation in her ability to make simple work-related decisions. (*Id.*) Dr. Pedro Ferreira, Ph.D., another state agency psychologist, reviewed the evidence in June 2002 and indicated that Jopson "should be able to perform unskilled work." (*Id.* at 413.) Dr. Maryanne Bongiovani, Ph.D., also a state agency psychologist, evaluated Jopson's record in July 2004. (*Id.* at 587.) Dr. Bongiovani affirmed Dr. Brandon's opinion and indicated that Jopson's depressed feelings were dependent on her medical condition and life situation. (*Id.*)

### B. Hearing Testimony

1. Edna Jopson's Testimony

At the April 12, 2005 hearing before ALJ Showalter, Jopson testified that her biggest medical problem is the pain from her fibromyalgia. (D.I. 6 at 272). She testified that the pain is constant and she takes OxyContin, Oxycodone, Tizanidine, Lexapro, and Ambien. (*Id.* at 273). She testified that she is depressed and has anger problems. (*Id.* at 276–78). She also suffers from panic attacks. (*Id.* at 295.) She has a herniated disk in her neck. (*Id.* at 276). She also

4

testified that she has trouble with bladder control. (*Id.* at 276.) Finally, she testified that she generally lacks energy and has trouble sleeping. (*Id.* at 283–84.)

2. William G. Jopson's Testimony

Once Ms. Jospon concluded, Mr. Jopson testified that before his wife got sick she was very active, but now she spends most of the day lying in bed. He is now responsible for the majority of the housework because she is not able to do it. (*Id.* at 297.) Mr. Jopson testified that his wife is in constant pain. (*Id.*). She no longer enjoys walking or bike riding. (*Id.* at 299.) He frequently observes her crying and sometimes she has panic attacks. (*Id.* at 300.)

3. The Vocational Expert's Testimony

An independent vocational expert ("VE") offered testimony regarding Jopson's background, skills, and limitations and the number of jobs that exist in the national economy that a person of Jopson's age, education, and skills may perform. The VE testified that Jopson could return to light work, such as cashier II, or unskilled assembly jobs. (*Id.* at 304.) The VE estimated that there were at least 2,000 cashier jobs and approximately 1,400 unskilled assembly jobs in the state of Delaware and over 700,000 cashier jobs nationally and 400,000 light assembly jobs nationally. (*Id.*)

### C. ALJ Showalter's Findings

ALJ Showalter must complete a five-step evaluation to determine whether a claimant suffers from a disability:

> [The Commissioner] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. 20 C.F.R. § 404.1520(b). If an individual is found not to be engaged in substantial gainful activity, the [Commissioner] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(c). If the

5

> [Commissioner] determines that the claimant suffers from a severe impairment, the [Commissioner] will next determine whether the impairment meets or equals a list of impairments in Appendix I of sub-part P of Regulations No. 4 of the Code of Regulations. 20 C.F.R. § 404.1520(d). If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [Commissioner] must determine if the individual is capable of performing in his past relevant work considering his severe impairment. 20 C.F.R. § 404.1520(e). If the [Commissioner] determines that the individual is not capable of performing his past relevant work, then he must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy. 20 C.F.R. § 404.1520(f).

*West v. Astrue*, C.A. No. 07-158, 2009 WL 2611224, at *5 (D. Del. August 26, 2009) (quoting *Brewster v. Heckler*, 786 F.2d 581, 583–84 (3d Cir. 1986)).

On April 27, 2005, ALJ Showalter issued a "Notice of Decision—Unfavorable," confirming the SSA's denial of DIB to plaintiff. ALJ Showalter's findings are summarized as follows:

1. The plaintiff meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(*l*) of the Social Security Act and is insured for benefits through December 31, 2002.
2. The plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.
3. The plaintiff's fibromyalgia, depression and cervical degenerative disc disease are considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(c).
4. These medically determinable impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
5. The plaintiff's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
6. The plaintiff has the residual functional capacity to perform a significant range of light work. She is occasionally able to climb stairs, ramps, ladders, ropes or scaffolds and occasionally balance, stoop, kneel, crouch and crawl. She must avoid concentrated exposure to extreme cold and hazards (machinery, heights, etc.) and is limited to simple, unskilled work.
7. The plaintiff is unable to perform any of her past relevant work (20 C.F.R. § 404.1565).

8. The plaintiff is an "individual closely approaching advanced age" (20 C.F.R. § 404.1563).

9. The plaintiff has a "high school (or high school equivalent) education" (20 C.F.R § 404.1564).

10. The plaintiff has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. § 404.1568).

11. The plaintiff has the residual functional capacity to perform a significant range of light work (20 C.F.R. § 404.1567).

12. Although the plaintiff's exertional limitations do not allow her to perform the full range of light work, using Medical–Vocational Rule 202.21 as a framework for decision-making, there are a *700 significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a cashier/ticket seller, assembler or hand packager.

13. The plaintiff was not under a "disability," as defined in the Social Security Act, at any time prior to December 31, 2002, the date her insured status expired. (20 C.F.R. § 404.1520(g)).

*Jopson*, 517 F. Supp. 2d 689, 699-700.

### D. The Remand Order

In her decision, Judge Robinson concluded that ALJ Showalter failed to give appropriate weight to two of Jopson's long-time treating physicians, Drs. Galvis and Beneck. *Id.* at 703-704. Instead, she found ALJ Showalter relied on various findings of Jopson's other physicians, none of whom had a treatment history with Jopson that was as long as Drs. Galvis and Beneck. *Id.* at 704. In the court's view, this was error. *Id.*

As a result, ALJ Showalter incorrectly evaluated Jopson's credibility. *Id.* at 707. ALJ Showalter did not find Jopson's testimony to be consistent with opinions that she weighed, but Jopson's testimony was consistent with Drs. Galvis and Beneck's testimony. *Id.* Because ALJ Showalter did not give proper weight to the evaluations of Drs. Galvis and Beneck, she incorrectly evaluated Jopson's credibility. The court also considered this to be plain error. *Id.*

### E. ALJ Showalter's Findings on Remand

Based on the factual evidence and the testimony, ALJ Showalter again found that Jopson was not disabled. (D.I. 6 at 46–47.) ALJ Showalter determined that Jopson's fibromyalgia, depression, anxiety, and cervical and lumbar degenerative diseases were severe impairments but did not meet listing-level severity. (*Id.* at 30–35.) ALJ Showalter also found that Jopson could perform simple, unskilled, light work involving occasional climbing, balancing, stooping, crouching, crawling, or kneeling. (*Id.* at 37.) ALJ Showalter accepted the VE testimony that such an individual could still perform unskilled light jobs. (*Id.* at 46.) ALJ Showalter's findings are summarized as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2002.

2. The claimant has not engaged in substantial gainful activity since April 25, 2001, the alleged onset date (20 C.F.R. §§ 404.1520(b) and 404.1571 et seq.).

3. The claimant has the following severe impairments: fibromyalgia, depression, anxiety, and cervical and lumbar degenerative disc disease (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in (20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d)), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to preform simple, unskilled, light work as defined in 20 CFR 404.1567(b) except that she could lift 20 pounds occasionally, 10 pounds frequently, sit for 6 hours in an 8 hour day, stand or walk for 6 hours in an 8 hour day, occasionally climbing, balancing, stooping crouching, crawling, and kneeling, and avoiding concentrated exposure to extreme cold and hazards.

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on July 26, 1953 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a find that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 404.1560(c) and 404.1566).

11. The claimant has not been under a disability as defined in the Social Security Act, from April 25, 2001 through the date of this decision (20 C.F.R. § 404,1520(g)).

## III. STANDARD OF REVIEW

### A. Review of an Agency Decision

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party[,]' but [refraining from] weighing the evidence or making credibility determinations." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). If the court determines that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

A reviewing court must uphold an ALJ's decision if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The inquiry focuses on whether ALJ Showalter's conclusion was

reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). "Where ALJ Showalter's findings of fact are supported by substantial evidence," the court is "bound by those findings, even if ... [it] would have decided the factual issue differently." *Fargonoli v. Massanari*, 247 F.3d 34, 38 (3d. Cir. 2001). In Social Security cases, this substantial evidence standard applies to motions for summary judgment. *See Woody v. Sec'y of the Dep't of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## IV. DISCUSSION

### A. ALJ's Weighing of the Evidence from Plaintiff's Treating Physicians

Jopson argues that ALJ Showalter's decision is founded on legal error and does not comply with Judge Robinson's order. Jopson asserts that despite the court's directive, ALJ Showalter did not give the medical opinions of Drs. Galvis and Beneck proper weight. (D.I. 11 at 8.) Jopson further argues that the "treating physician doctrine" requires a court to give greater weight to the opinions of the treating physician. *Mason v. Shalala*, 999 F.2d 1058, 1067 (3d Cir. 1999). (D.I. 11 at 8.) Jopson also cites *Brownawell v. Comm'r of Soc. Sec.*, which found it "improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with the testimony of the claimant's treating physician." 554 F.3d 352, 357 (3d Cir. 2008). (D.I. 11 at 8.) She contends that ALJ Showalter ultimately made the same residual functioning capacity finding based upon grounds the district court had previously rejected. (*Id.*)

The Commissioner responds that ALJ Showalter is not bound to use any particular language in her findings and need only be sufficiently specific to allow a reviewing court to determine how much weight was assigned and the reasons for that assignment. (D.I. 15 at 18).

10

*See* SSR 96-2p, 1996 WL 374188, at *5.³ The Commissioner cites *Cotter v. Harris*, where the Court stated that a sentence or short paragraph would suffice from ALJ Showalter. 650 F.2d 481, 482 (3d Cir. 1981). (D.I. 15 at 19.)

The Commissioner further argues that ALJ Showalter was not required to adopt the opinion of Dr. Beneck and was not required to give Dr. Galvis' opinion controlling weight. (D.I. 15 at 19, 26.) In support of the view, the commissioner notes that Dr. Beneck treated Jopson only during the last month of the relevant period, and that the doctor rendered the 2008 opinion years after Jopson's last insured date. (*Id.* at 26.) To support this argument, the Commissioner cites *Johnson v. Comm'r of Soc. Sec.*, which held that the claimant must prove that her disability occurred before her last insured date. 529 F.3d 198, 203–04 (3d Cir. 2008). Furthermore, claims the Commissioner, the evidence for disability cannot be of a latent disability or deterioration, or otherwise it can be rejected without explanation. *Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). The Commissioner notes that in Dr. Galvis' evaluation in September 2002, Jopson stated that "I'm leveling off," (D.I. 6 at 473), and that there was no other indication of disability during the relevant time period. Therefore, the Commissioner asserts that Dr. Galvis' opinion does not deserve controlling weight and that ALJ Showalter was entitled to rely on other evidence such as reports from the state agency physicians. (D.I. 15 at 22.)

The court agrees that ALJ Showalter must weigh Drs. Galvis and Beneck's opinions. A judge should give "treating physicians' reports great weight, 'especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000) (quoting *Plummer v. Apfel,*

---

³ "The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." SSR 96-2p, 1996 WL 374188, at *5.

11

186 F.3d 422, 429 (3d Cir.1999)). However, while contradictory medical evidence is required for an ALJ to reject a treating physician's opinion, an ALJ has discretion to assign such an opinion "more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429. The instant record does show that ALJ Showalter provided some explanation of the weight assigned to the opinions at issue. (D.I. 6 at 37–45.) Had the ALJ rejected the treating physicians' opinions, further explanation would have been necessary. In the instant case, while ALJ Showalter's evaluation is not overly detailed, it does provide sufficient reason for the court to conclude ALJ Showalter did not commit error.

**B.     ALJ's Finding of Jopson's Credibility**

There is a two-step analysis for the evaluation of credibility in Social Security benefits cases. 20 C.F.R. § 404.1529. First, there must be a medically determinable impairment which could produce pain. (*Id.*) Second, ALJ Showalter must consider the credibility of the evidence, in light of: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of medications; (v) treatment other than medication; (vi) other measures used to relieve symptoms; (vii) other functional factors and limits. (*Id.*) Credibility determinations are the province of the ALJ and should be disturbed on review only if they are not supported by substantial evidence. *Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

In this appeal, Jopson argues that ALJ Showalter failed to give significant weight to the treating physicians' opinions, and therefore has a legally insufficient credibility assessment. Jopson alleges that ALJ Showalter selectively considered her testimony. (D.I. 11 at 13.) Jopson

further asserts that ALJ Showalter was selective when assessing the testimony from Jopson's husband, only crediting Mr. Jopson's testimony to the extent that it was consistent with Jopson's assigned RFC. (*Id* at 14.) The Commissioner asserts that even though the ALJ did not find Jopson's complaints credible, she accounted for her alleged symptoms and gave weight to the treating physicians' opinions. (*Id.* at 31.)

ALJ Showalter found Jopson not entirely credible. (*See* D.I. 6 at 40.) This finding is supported by more than a mere scintilla of evidence. In 2002, Dr. Kim found that Jopson did not have muscle atrophy and that Jopson was able to stand and walk on toes and heels. (D.I. 6 at 39, 357.) In November 2002, the consultation with Dr. Beneck showed that there was no lumbar shift and the cervical and lumbar range of motion was within normal limits. (*Id.* at 39, 462–64.) Furthermore, from December 2002 until June 2003, Jopson required no further treatment of her physical impairments, undermining her complaints of disabling pain. (*Id.* at 457–58.) Finally, in June 2003 Dr. Beneck observed that Jopson was "doing a little bit better . . . ." (*Id.* at 457.) ALJ Showalter made the credibility determination after giving weight to the opinions of the treating physicians. Thus, ALJ Showalter adequately assessed the evidence in the record in making his credibility determination.

## C. Award of Benefits

Jopson alleges that an award of benefits is warranted. (D.I. 11 at 17.) Based on the foregoing assessment and evaluations, ALJ Showalter's decision should be affirmed because it is supported by substantial evidence and properly addresses and weighs the relevant opinions, per the remand order.

13

## V. CONCLUSION

For the foregoing reasons, the court concludes that ALJ Showalter's denial of DIB is based on substantial evidence. Accordingly, the court will deny Jopson's motion for summary judgment and grant the Commissioner's motion for summary judgment.

Dated: September 16ᵗ, 2015

_____
UNITED STATES DISTRICT JUDGE