IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EDNA JOPSON,

        Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

        Defendant.

Civil Action No. 1:10-cv-00901-RGA

**MEMORANDUM**

Presently before the Court is Plaintiff's Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. (D.I. 20). The parties have briefed the issue. (D.I. 20, 21). For the reasons set out below, Plaintiff's motion is **DENIED**.

This action arises from the denial of Ms. Edna Jopson's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401-33. Ms. Jopson filed her application for DIB in October 2001, alleging disability due to fibromyalgia and depression since April 25, 2001. (D.I. 6 at 170-75). After a denial in 2002 (*id.* at 160-69), Ms. Jopson refiled her DIB claim in February 2004. (*Id.* at 176-78). Ms. Jopson's DIB claim was again denied. As a result, she requested and was granted a hearing before an Administrative Law Judge ("ALJ") on April 12, 2005. (*Id.* at 264). The ALJ ruled against Ms. Jopson. (*Id.* at 77). The Appeals Council denied Ms. Jopson's request for review in December 2005. (*Id.* at 120, 308).

Ms. Jopson then filed an appeal to this Court. In September 2007, the Court remanded Ms. Jopson's case to the Commissioner of the Social Security Administration. *Jopson v. Astrue*, 517 F. Supp. 2d 689, 699-700 (D. Del. 2007). Following remand, in August 2008, the ALJ again found that Ms. Jopson was not disabled. (D.I. 6 at 47). In September 2010, the Appeals Council denied Ms. Jopson's appeal from that decision. (*Id.* at 6-8).

Ms. Jopson again appealed the decision to this Court seeking review of the Commissioner's final decision denying her DIB claim. (D.I. 1). On September 16, 2015, the Court granted the Commissioner's cross-motion for summary judgment. (D.I. 19). Presently, Ms. Jopson requests that the Court alter or amend its order granting summary judgment to Defendant. (D.I. 20).

## I.    LEGAL STANDARDS

The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

## II.    BACKGROUND

Ms. Jopson was born on July 26, 1953. *Jopson*, 517 F. Supp. 2d at 691. She has a high school education and past work experience as a bus driver and waitress. *Id.* She was forty-seven years old at her alleged onset date of disability of April 25, 2001. (D.I. 6 at 234).

In the 2008 decision, the ALJ found that Ms. Jopson had multiple severe impairments.[1]

Specifically, the ALJ found that Ms. Jopson suffered from: "fibromyalgia, depression, anxiety,

and cervical and lumbar degenerative disc disease." (*Id.* at 30; *cf. id.* at 76 (2005 opinion finding

only fibromyalgia, depression and cervical degenerative disc disease)).

Considering the limitations presented by these impairments, the ALJ made the following

Residual Functional Capacity (RFC) finding:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform simple, unskilled, light
> work as defined in 20 CFR 404.1567(b) except that she could lift 20 pounds
> occasionally, 10 pounds frequently, sit for 6 hours in an 8 hour day, stand or walk
> for 6 hours in an 8 hour day, occasionally climbing, balancing, stooping,
> crouching, crawling, and kneeling, and avoiding concentrated exposure to
> extreme cold and hazards.

(*Id.* at 37; *see also id.* at 76 (2005 RFC finding)).

The ALJ relied on her RFC finding to develop a Vocational Expert (VE) hypothetical.

(*See id.* at 46). The hypothetical posed by the ALJ was:

> [I]f we were to consider a hypothetical person who is about the claimant's stated
> age at onset, 47 years, 12th grade education, the work history that you cited. This
> individual has certain underlying impairments that cause limitations. This person,
> although semiskilled work background, is limited to simple, unskilled work at a
> light level of exertion with all of the posturals occasional and avoiding
> concentrated exposure to extremes in cold and to hazards. . . . Would there be . . .
> work in the national or regional economy such a person could do in your opinion?

(*Id.* at 303-04 (VE hypothetical used for both the 2005 and the 2008 ALJ opinions)).

In response, the VE described the type of work available, both locally and nationally, to

such a person as:

> [A]lmost a full range of light work . . . it would permit something along the line of
> a cashier II, ticket seller, characterized as light by the DOT. . . . I'd say the light,
> unskilled types of cashiering jobs like that there would be . . . at least 2,000 in the
> state. Another type of light job would be like unskilled assembly jobs. I would

---

[1] A severe impairment is one which "significantly limits [a claimant's] physical or mental ability
to do basic work activities." 20 C.F.R. § 404.1520(c).

estimate those around 1,400 in the state. There would be jobs like . . . hand packaging. I would say there would be around 500 light ones in the state of Delaware. Nationally, I would say the cashier II . . . maybe over 700,000 . . . . And assembly, I'd say nationally in the light category there would probably be over 400,000. And the packing type of jobs nationally about 200,000.

(*Id.* at 304).

## III. DISCUSSION

Ms. Jopson argues that the Court committed a clear error of law by failing to address her summary judgment arguments relating to the VE hypothetical used as a basis for the ALJ's decision. "A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Ms. Jopson argues that the ALJ's VE hypothetical was defective: (1) by failing to account for her anxiety and lumbar degenerative disc disease, (2) by not including a limitation with respect to heights, (3) by not accounting for her moderate limitation of concentration, persistence, or pace, and (4) by not including all of the limitations identified by the credited physicians' opinions.

### A. Limitations Posed by Anxiety and Lumbar Degenerative Disc Disease

Ms. Jopson argues that the ALJ erred by failing to include limitations attributable to anxiety and lumbar degenerative disc disease in the VE hypothetical. Her argument stems largely from the fact that the ALJ did not include these severe impairments in the 2005 opinion. She posits, "[O]ne would expect some additional limitations in standing/walking, lifting/carrying, and postural activities, when compared to a claimant with a severe impairment of the upper (cervical) spine . . . [and] . . . one would expect severe anxiety to cause panic or limit a claimant's ability to handle stress." (D.I. 11 at 15). However, Ms. Jopson does not cite any authority to support her position that every severe impairment must result in additional

4

limitations. Moreover, she does not cite any record evidence credited by the ALJ which would support limitations uniquely attributable to anxiety or lumbar degenerative disc disease.

Considering the lack of evidence of limitations attributable to anxiety and lumbar degenerative disc disease, the ALJ reasonably concluded that these conditions resulted in no further limitations. Thus, the VE hypothetical was not deficient merely because it remained unchanged between the 2005 and 2008 opinions.

### B. Heights Limitation

Ms. Jopson argues that the VE hypothetical was deficient because it omitted a heights limitation. (D.I. 20 at 2; D.I. 11 at 15). The Commissioner responds, "[T]he ALJ specifically asked the vocational expert to identify jobs involving no hazards." (D.I. 21 at 2). "Hazards" is a blanket term which includes "unprotected elevations." SSR 85-15, 1985 WL 56857 (1985). Therefore, the VE hypothetical did include a heights limitation and was not deficient in this way.[2]

### C. Moderate Limitations of Concentration, Persistence, or Pace

Ms. Jopson argues that the ALJ did not account for her moderate limitations of concentration, persistence, or pace in the RFC finding and VE hypothetical. (D.I. 20 at 2; D.I. 11 at 15). To support her position, Ms. Jopson cites *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004). There, the Third Circuit held that the hypothetical question asked of the vocational expert "did not accurately convey all of [claimant's] impairments, and the limitations they cause," which meant that the ALJ's decision was not supported by substantial evidence. *Id.* at 552. The hypothetical question included the limitation that claimant could perform "no more

---

[2] Even if "hazards" did not include heights, the omission would be harmless because the positions identified by the VE (cashier II, assembly jobs, and hand packaging) do not involve heights. (D.I. 6 at 304-05).

than simple one or two-step tasks." *Id.* at 554. The ALJ had found that the claimant "often suffered from deficiencies in concentration, persistence, or pace." *Id.* The Court explained that "deficiencies in pace" would impact whether an individual who could perform simple tasks could perform them "over an extended period of time." *Id.* The Court also noted, "[T]here may be a valid explanation for [not including deficiencies in pace] from the ALJ's hypothetical." *Id.* at 555. It might not "limit her ability to perform tasks under a production quota." *Id.* It seems that the reversal in *Ramirez* was premised on an inadequate explanation for the omission of a mental limitation in a hypothetical question. Thus, I think it would be incorrect to read *Ramirez* as requiring either that a finding of a moderate deficiency in concentration, persistence or pace had to appear in the hypothetical question once such a finding is made or that a limitation to "simple, unskilled work" cannot account for a claimant's mental impairments.

The VE hypothetical adequately accounted for all of Ms. Jopson's limitations. The record evidence cited by the ALJ supports her conclusion that simple, unskilled work would adequately compensate for Ms. Jopson's moderate limitations of concentration, persistence, or pace. Specifically, the ALJ assigned great weight to Dr. Brandon's assessment that Ms. Jopson's loss of concentration was partially due to her fibromyalgia, that Ms. Jopson had the mental ability to understand work requirements, and that Ms. Jopson could perform low-stress work. (*Id.* at 41, 43; *see id.* at 391, 499). She also assigned great weight to Dr. Ferreira's opinion that Ms. Jopson could perform unskilled work. (*Id.* at 43; *see id.* at 413). Both doctors evaluated Ms. Jopson's physical and mental health. (*See id.* at 40-41). The ALJ also noted that Ms. Jopson was able to care for several pets and her mother. (*Id.* at 39).

Although the VE hypothetical does not directly mention Ms. Jopson's mental limitations, it was sufficient based on the record. Two State medical consultants opined that Ms. Jopson

could complete simple, unskilled work with her mental limitations. Moreover, the ALJ properly considered Ms. Jopson's ability to manage housework as an indication of her ability complete simple work-type tasks. Thus, the ALJ's limitation to simple, unskilled work was consistent with the limitations in the record and adequately accounted for Ms. Jopson's moderate restrictions in the areas of concentration, persistence, or pace.

### D. Limitations Identified by Physicians' Opinions

Ms. Jopson argues that the ALJ erred by failing to include certain limitations in the RFC finding and VE hypothetical. Drs. Brandon, Ferreira and Bongiovani each noted in Section I of their mental RFC assessment forms that Ms. Jopson would be moderately limited in her ability to maintain attention and concentration for extended periods, complete a normal work day and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (D.I. 6 at 393-94, 411-12, 501-02). The ALJ gave these doctors' opinions great weight. (*Id.* at 43-44).

The ALJ did not err by omitting the limitations found in Section I of the RFC assessment form. A Plaintiff "cannot rely on the worksheet component of the Mental Residual Functional Capacity Assessment to contend that the hypothetical question was deficient . . . ." *Smith v. Comm'r*, 631 F.3d 632, 637 (3d Cir. 2010). "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS DI 24510.060, available at https://secure.ssa.gov/apps10/porns.nsf/lnx/0424510060 (emphasis in original). Because the summary conclusions of Section I are not part of the doctors' RFC findings, the ALJ need not include any of those limitations in the RFC finding or VE hypothetical. Thus, although the ALJ did not include Section I limitations in the VE hypothetical, she did not err by omitting them.

## IV. CONCLUSION

Ms. Jopson has failed to demonstrate that the Court committed a clear error of law resulting in manifest injustice by affirming the ALJ's decision without addressing her VE hypothetical argument. Therefore, I will deny Plaintiff's motion.